# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JACOB DEON FONVILLE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-01340-KOB-HNJ |
| KELLER W. SPEAKS, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jacob Deon Fonville, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 for violations of his civil rights. Doc. 1. Plaintiff names the following defendants in the complaint: Correctional Officers Keller Speaks and Zackery McLemore. *Id.* at 1-2. Plaintiff seeks monetary relief. *Id.* at 5. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). For the following reasons, the undersigned recommends the court grant defendants Speaks and McLemore's motion for summary judgment and dismiss plaintiff's claims with prejudice.

### I. Procedural History

On February 3, 2020, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to the defendants and directing them to file a Special Report addressing plaintiff's factual allegations. Doc. 8. The

undersigned advised the defendants that the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.*

On May 8, 2020, defendants Speaks and McLemore filed a Special Report, supplemented by affidavits and other evidence.  Doc. 13.  On August 17, 2020, the undersigned notified the parties that the court would construe the Special Report as a motion for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material.  Doc. 19.  The undersigned also advised plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  *Id.*; *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  On September 11, 2020, plaintiff filed a response.  Doc. 22.

This matter now proceeds before the court on the defendants' motion for summary judgment and the response thereto.

## II. Standard of Review

Because the court has construed the defendants' Special Report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most

favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449

3

U.S. 5, 9 (1980).  A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed.  *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. Summary Judgment Facts[1]

On March 19, 2019, prison staff reassigned plaintiff from a single, one-man cell in G-Unit, to a double, two-man cell in Y-Unit.  Doc. 1 at 11.  After plaintiff entered the cell, his new cellmate told him he had "15 minutes to get out [of] his cell" or he would stab plaintiff.  *Id.*  Plaintiff's cellmate was not a documented enemy. *Id.*  Plaintiff began to kick the door to get an officer's attention.  *Id.*  Correctional Officers Speaks and McLemore arrived at the cell and asked who kicked the door.  *Id.* When plaintiff responded that he had, the officers sprayed him with pepper spray and beat him with a

---

[1] Pursuant to foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to plaintiff.

baton. *Id.*[2] [3]

Prison medical staff completed a body chart which indicated plaintiff sustained a laceration to the right side of his head. Doc. 13-10. In addition, plaintiff sustained

---

[2] Defendant Speaks asserts that on March 19, 2019, at approximately 1:24 p.m., he and defendant McLemore were conducting a security check of Y-Unit. Doc. 13-1, Speaks Aff. Speaks states that as he approached cell Y-3, he observed plaintiff with a sheet tied around his neck in an attempt to hang himself. *Id.* Speaks alleges that when he opened cell Y-3 to stop plaintiff from hanging himself, plaintiff suddenly rushed the cell door, attempting to attack Speaks. *Id.* Speaks claims that out of fear for his safety, he engaged plaintiff and delivered several palm heel strikes to plaintiff's facial area. *Id.* He claims plaintiff continued to fight and did not comply with his direct orders to stop resisting and to lie on the ground. *Id.* Speaks then attempted a two on one take down, but due to the limited space inside the cell, the take down attempt was unsuccessful. *Id.* He contends plaintiff was able to get back on his feet and continued to be combative and fail to comply with direct orders. *Id.* Speaks states he engaged plaintiff a second time, attempting a second two on one take down. *Id.* He alleges plaintiff continued to kick him and failed to follow direct orders. *Id.* Speaks claims he was able to gain control of plaintiff, handcuffed him to the rear, and thus, all force ceased. *Id.*

[3] Defendant McLemore alleges that on March 19, 2019, at approximately 1:25 p.m., he was conducting a security check of Y-Unit when defendant Speaks directed him to report to cell Y-3. Doc. 13-2, McLemore Aff. at 1. McLemore notes that when defendant Speaks opened the Y-3 cell door, plaintiff rushed out of the cell swinging wildly at Speaks with his fist clinched. *Id.* McLemore contends he gave plaintiff several direct orders to stop and get on the floor, but plaintiff refused to comply. *Id.* He states that although Speaks took plaintiff to the floor, plaintiff was able to get back on his feet. *Id.* McLemore claims plaintiff attempted to rush towards Speaks, and McLemore administered a one one-second burst of SABRE Red chemical agent to plaintiff's facial area. *Id.* He alleges plaintiff lost his balance and fell to the floor, striking the left side of his head on the floor. *Id.* McLemore states plaintiff immediately returned to his feet as if the chemical agent had no effect on him and rushed back towards defendant Speaks, swinging his clinched fist. *Id.* He asserts he gave plaintiff several direct orders to stop and lie on the floor, but plaintiff refused. *Id.* McLemore states that out of fear for his safety and that of defendant Speaks, he drew his baton and administered a series of low forehand swings to plaintiff's leg and back. *Id.* McLemore alleges that although officers tackled plaintiff to the floor again, he continued to swing and kick at the officers. *Id.* McLemore states he continued to give plaintiff several direct orders to lie on the floor and stop his assault, but plaintiff refused to comply. *Id.* McLemore claims he administered a second series of low forehand swings to plaintiff's right leg, inadvertently striking plaintiff's right arm as plaintiff attempted to block the strikes. *Id.* at 1-2. McLemore states he gave plaintiff several direct orders to lie prone and put his hands behind his back. *Id.* at 2. Plaintiff complied, the guards placed handcuffs on plaintiff, and all force ceased. *Id.* The guards assisted plaintiff to his feet and escorted him to the infirmary for decontamination and a body chart. *Id.*

5

bruises to his left and right shoulders, a puncture wound on the back of his right arm, bruises and swelling on his right ankle, and an abrasion on his left ankle. *Id.* Pictures of plaintiff shortly after the incident show some of his injuries, including the puncture wound to the back of his right arm and his swollen right ankle. Doc. 13-12 at 1-12.

Plaintiff states the laceration to his head required three staples. Doc. 1 at 5. Subsequent x-rays of plaintiff's ankle revealed a fracture of the distal aspect of the right fibula and soft tissue swelling over the lateral malleolus. Doc 13-5 at 9. [4]

On March 22, 2019, Captain Shannon Caldwell completed a Use of Force Investigative Report concerning the March 19, 2019 incident. Doc. 13-9. Caldwell found that Speaks' and McLemore's use of force was justified, and they used a reasonable amount of force to control plaintiff and achieve a legitimate correctional objective. *Id.*

---

[4] Plaintiff also states he suffers from migraines and memory loss due to his head injury and "back and spine problem[s]." Doc. 1 at 5, 12. However, plaintiff's medical records do not indicate a history of migraines or memory loss associated with his injuries on March 19, 2019. Doc. 13-3 to -8. An x-ray of plaintiff's lumbar spine taken since the incident occurred exhibited "[n]o obvious evidence of an acute injury involving the lumbar vertebral column." Doc. 13-5 at 4. However, medical staff suspected plaintiff's ankle injury may have been contributing to an altered gait and referred him to physical therapy. Doc. 13-4 at 4.

## IV. Analysis

Defendants Speaks and McLemore's motion for summary judgment merits granting on plaintiff's Eighth Amendment excessive force claims asserted against them in their individual capacities for monetary damages.

The court must analyze Plaintiff's excessive force allegations under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374-75 (11th Cir. 1999). In *Hudson v. McMillian*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley v. Albers*, 475 U.S. at 321.

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9-10 (citations omitted).

To create a genuine issue of material fact, a plaintiff must come forward with evidence from which a reasonable inference can be drawn that a defendant acted maliciously and sadistically. Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

Although plaintiff claims defendants Speaks and McLemore sprayed him with pepper spray and hit him with a baton on March 19, 2019, after he kicked his cell door, (doc. 1 at 11), he does not dispute the additional events that precipitated the defendants' use of force. Specifically, plaintiff does not refute that once the defendants opened his

8

cell door, he rushed towards defendant Speaks swinging his clinched fist. Doc. 1; Doc. 13-1, Speaks Aff.; Doc. 13-2, McLemore Aff. at 1. Neither does plaintiff refute that he repeatedly disobeyed verbal orders to stop resisting and to lie on the floor. *Id.*

Furthermore, although plaintiff averred that he banged on his cell door to alert the guards as to an imminent risk of harm from his cellmate, doc. 1 at 11, in suicide counseling after the altercation he reported on March 19, 2019, that he kicked the door to obtain medical attention for shoulder pain (doc. 13-8 at 2), and on March 20, 2019, he reported that he beat on the door "asking for someone to talk to him regarding why he was over" in Y block. Doc. 13-7 at 8.[5] He also remarked during counseling that "he needs to go back to a single cell and there will be issues if they try to put him into a cell with someone else"; and, he "had been in a single cell when suddenly he was moved to Y block and put in a cell with someone else," which caused him to be "worried about his safety" and express his preference "to be in a single cell." Doc. 13-6 at 34, 37. Nevertheless, the medical records do not reflect plaintiff admitted that he attacked the guards.

The undersigned notes the balance between accepting plaintiff's version of the facts as true with recognizing the parties' evidentiary burden on summary judgment. The undersigned notified plaintiff that a party opposing a motion for summary judgment under Rule 56 must respond with counter-affidavits and/or documents

---

[5] These statements circumvent the hearsay rule due to Federal Rules of Evidence 801(d)(2)(A) (statement by a party opponent) and 803(4) (statements made for medical diagnosis or treatment).

9

setting forth specific facts demonstrating the existence of a genuine dispute of material fact for resolution at trial. Doc. 19 at 1, 3. The undersigned further advised plaintiff that if the party opposing the motion does not comply with Rule 56, the court may declare the facts in the affidavits and/or documents supporting the motion to be established as true and find no genuine dispute of material fact exists. *Id.* at 2-3.

While "specific facts" pleaded in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment, *see Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)), plaintiff's sworn complaint fails to contain sufficient *specific* facts to refute the defendants' sworn affidavits. Doc. 1. In his response to summary judgment, plaintiff does not expressly deny or dispute the defendants' version of events, but merely questions the defendants' averments regarding whether the altercation happened in or out of the cell, the length of the altercation, and the lack of body charts for the defendants. Doc. 22 at 2. Regardless, plaintiff's response is not sworn, and the court cannot consider it as an unsworn written declaration, made under penalty of perjury, as required by 28 U.S.C. § 1746. As a general rule, district courts may not consider unsworn statements when "determining the propriety of summary judgment." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980).[6]

---

[6] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Plaintiff has failed to meet his evidentiary burden on summary judgment. Because neither plaintiff's complaint nor his response creates a factual dispute concerning whether he attacked defendants Speaks and McLemore when they opened his cell on March 19, 2019, the defendants' averments that he did are established as true.

Because plaintiff rushed Speaks when Speaks and McLemore opened his cell door, Speaks delivered several palm heel strikes to plaintiff's facial area and attempted to tackle him. Doc. 13-1, Speaks Aff. When plaintiff continued to resist, McLemore administered a one-second burst of SABRE Red to plaintiff's facial area. Doc. 13-2, McLemore Aff. at 1. However, plaintiff continued to swing at the defendants and disregard their orders. *Id.* McLemore states that out of fear for his and defendant Speaks's safety, he drew his baton and administered a series of low forehand swings to plaintiff's leg and back. *Id.* Although officers tackled plaintiff to the floor, he continued to swing and kick at the officers. *Id.* McLemore states he continued to give plaintiff several direct orders to lie on the floor and stop his assault, but he refused to comply. *Id.* McLemore claims he administered a second series of low forehand swings to plaintiff's right leg. *Id.* at 1-2. McLemore alleges he gave plaintiff several direct orders to lie prone and put his hands behind his back. *Id.* at 2. Plaintiff eventually complied, and officers placed handcuffs on plaintiff and all force ceased. *Id.*

Given plaintiff's undisputed failure to obey orders and his continued resistance, defendants Speaks and McLemore were justified in taking some action against plaintiff

11

to restrain him and to accomplish security interests. In light of the tense security situation, the undersigned cannot say the amount of force used by the defendants to gain control over plaintiff exceeded the amount needed. The evidence does not reflect that the defendants maliciously and sadistically attacked plaintiff. Neither was the force "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). Rather, the level of violence by plaintiff warranted a response from the defendants that was perceived by them as sufficient to prevent injury and resistance.

While assessing the credibility of the allegations made by plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment, *see, e.g. Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986), portraying a genuine issue of material fact requires plaintiff to produce evidence raising a reasonable inference that defendants Speaks and McLemore acted maliciously and sadistically. The court need not second guess a prison official's use of force in response to a violent disturbance and resistance by prisoners unless that force is so excessive as to be unmistakably malicious and sadistic. *Hudson*, 503 U.S. at 6-7; *Wilson v. Blankenship*, 163 F.3d at 1295. The use of force by prison officials to compel compliance with security and safety needs in the prison is, unfortunately, a common if not frequent occurrence. Such uses of force to maintain order and discipline are not unconstitutional unless the force is so great or so unnecessary that it can be nothing more than malicious and sadistic. Where the evidence leaves room for the conclusion that force was applied for the legitimate

purpose of restoring or maintaining order, there ensues no genuine issue of fact precluding summary judgment.

Here, the evidence plainly leaves room for the conclusion that defendants Speaks and McLemore acted with the legitimate intent to restore or maintain order, rather than maliciously or sadistically. The undisputed evidence that plaintiff rushed defendant Speaks with a clenched fist and refused to obey direct orders to lie on the floor authorized the defendants to use force, and the court may not second-guess that force given the circumstances. *See generally Graham v. Connor*, 490 U.S. 386, 396-397 (1989). The Eighth Amendment proscribes force involving a malicious and sadistic intent, a requirement which does not exist here.

The record further shows that the defendants attempted to temper the severity of the response by giving plaintiff multiple orders to lie down and stop resisting. Doc. 13-1, Speaks Aff.; Doc. 13-2, McLemore Aff. at 1-2. When plaintiff failed to comply, defendant McLemore administered a one second burst of SABRE Red into plaintiff's face. Doc. 13-2, McLemore Aff. at 1. When this had no effect on plaintiff, defendant McLemore drew his baton and struck plaintiff's back and lower body. *Id.* at 1-2.

Plaintiff sustained multiple bruises, a laceration to his head, a puncture wound to the back of his arm, and a fractured ankle. Doc. 13-5 at 9; Doc. 13-10. Given the undisputed facts that plaintiff fell after defendant McLemore sprayed him with SABRE Red, the defendants twice attempted to tackle plaintiff, and defendant McLemore used

13

his baton to strike plaintiff several times on his back and lower extremities, plaintiff's injuries were consistent with the use of force.

Nonetheless, the extent of injury suffered is but one factor to be considered in determining whether the use of force was excessive. *See Hudson*, 503 at 7. The U.S. Supreme Court in *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010), clarified that the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" (quoting *Hudson*, 503 U.S. at 7). Even viewing the seriousness of plaintiff's injuries, his allegations, if proven at trial, still fail to establish that defendants Speaks' and McLemore's use of force was malicious and sadistic. There was a need for the application of force, and the force used was not unreasonable, given plaintiff's undisputed violence against officers.

Based on the foregoing, defendants Speaks and McLemore's motion for summary judgment merits granting and plaintiff's Eighth Amendment excessive force claims warrant dismissal.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court **GRANT** defendant Speaks and McLemore's motion for summary judgment and **DISMISS** plaintiff's claims **WITH PREJUDICE**.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record

developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 12th day of January, 2021.

                                                HERMAN N. JOHNSON, JR.
                                    UNITED STATES MAGISTRATE JUDGE